## EAMES *v.* NORTHUMBERLAND.

Upon a petition to selectmen to lay out a new highway, they have no jurisdiction to lay out a highway with *termini* substantially different from those set out in the petition.

Where a road in a town has not been used twenty years as a public highway, the town is not estopped to show that it has not been legally laid out as a highway.

Where a town votes to discontinue a road in the town, which is not a public highway, a land-owner is not entitled to damages under section 3 of chapter 54 of the Revised Statutes.

THIS is a petition, in which the petitioner represents that on the 12th of September, 1857, there was and for a long time before then had been a common public highway, leading from the top of the hill near James Richey's house, in a northerly direction, across land of said Richey and across land of the petitioner; that on the said 12th day of September, 1857, at a town meeting in said Northumberland, duly called and held for that purpose, the inhabitants of said town voted to discontinue said highway, the said town then and there having sufficient jurisdiction and authority to discontinue the same; and praying for an award of such damages as should be just, agreeably to the statute. The petition was filed, and an order of notice was issued March 22, 1860. The trial was by jury.

From the testimony given on the trial and concessions made, the following facts appear:

For more than thirty years there had been a public highway leading through said Northumberland, from Lancaster to Stratford, called the River Road. Upon this road there was a bridge across the Upper Ammonoosuc river, which was situated in a place where it was difficult to sustain it. On the 19th of May, 1845, Hiram Lucas and others preferred a petition in due form to the selectmen of said Northumberland, requesting them to lay out a highway from Daniel Rich's house, easterly, to the guide-board near said James Richey's house.

Upon this petition two of the selectmen, namely, James B. Brown and Seth Eames (there being but one other selectman), met on the · 30th of September, 1845, and adjudged that said highway ought to be straightened and widened a part of the way. They then began on said old highway, near a black cherry tree, which is admitted to be about seventy rods northerly of the southerly terminus fixed by the petition, and laid out a new highway in the direction of said Daniel Rich's house, a distance of seventy-six rods on said Richey's land, to the Ammonoosuc river, and awarded him $20 damages. From the southerly bank of said river they laid out said highway seventy-two rods, across the river and across the land of said Seth Eames, to the line of C. Perkins' land. The selectmen say in their report that said Seth Eames agreed to pay the town $20 in labor on the road. From thence they laid said road forty-six rods, across the land of C. Perkins to the then traveled highway, and assessed said Perkins' damages at $15. This terminus, which was the end of the road laid by them, was about fifty rods southerly of the house of Daniel Rich. They laid out said road four rods

wide. This new road, as laid, crossed the river about thirty rods above or easterly of the former bridge, requiring a new bridge to be built. The report of said selectmen was duly returned and recorded in the town clerk's office.

The defendants made the following objections to this laying out of said highway:

1. That the selectmen did not lay the road from one terminus to the other, as fixed in the petition.

2. That they undertook to widen and straighten the old highway, and did not follow the prayer of the petition.

3. That Seth Eames appears to be interested, so that he was disqualified to act.

4. That the selectmen of a town have no power to lay out or alter any part of a highway passing from one town to another.

The selectmen of Northumberland called a town meeting, by warrant dated July 20, 1857, to be held August 5, 1857, which warrant was duly posted. The third article in the warrant is, ": To see if the town will vote to discontinue the highway from the top of the hill, at or near the guide-board, north of Capt. J. Richey's house, to the dwelling-house of E. F. Bucknam." On the 5th of August, 1857, the voters met and duly organized the meeting, and adjourned to September 12, 1857, at one o'clock P. M., when the voters met and "Voted to discontinue the road from the top of the hill, near James Richey's, to the north bank of the Ammonoosuc river." Also, "Voted to discontinue the road from the north side of said river to E. F. Bucknam's line." It is admitted that the town have raised money for many years since said road was laid out, and 'have expended it to build and keep said road in repair, and that with such money a new bridge was built; that since then, to the discontinuance aforesaid, the public travel has been on the new road, the old one becoming impassable; that from the time of said laying out till the discontinuance, it was always included in the warrants of the surveyors.

It is admitted that the petitioner owned land, as set forth in the petition. A verdict was taken, by consent, for $500, subject to be set aside and a judgment to be entered for the town; or, if the court shall hold on this case that the petition can be sustained, then the verdict is to be reduced to such sum as auditors to be appointed by the court shall find, on view of the premises and on a hearing on notice.

*Burns & Fletcher,* for the defendants.

*Whidden,* for the plaintiff, cited *State* v. *Richmond,* 26 N. H. 232; 2 Kent Com. 234; *Hanson* v. *Hoitt,* 14 N. H. 56; Comp. Stat., ch. 58, sec. 2.

BARTLETT, J. A petition is essential to the jurisdiction of selectmen to lay out a new highway. *Pritchard* v. *Atkinson,* 3 N. H. 337; *Wiggin* v. *Exeter,* 13 N. H. 307; *Raymond* v. *Griffin,* 23 N. H. 335; *State* v. *Canterbury,* 40 N. H. 311; *Cole* v. *Canaan,* 29 N. H. 93. The

petition being the foundation of their jurisdiction to lay out a particular highway, it follows that upon a petition for one highway they have no authority to lay out another; for there is no petition for such other highway before them, and without a petition they can not act.   In the present case the road attempted to be laid was not the one prayed for, as, under the circumstances stated, we must hold the *termini* substantially different.   The road not having been used as a public highway twenty years, the defendants are not estopped to take this objection.   *Hall* v. *Manchester*, 39 N. H. 303; *Smith* v. *Northumberland*, 36 N. H. 9; *Northumberland* v. *Atlantic & St. Lawrence Railroad*, 35 N. H. 576; *Haywood* v. *Charlestown*, 34 N. H. 28.   As the objection is well taken, and goes to the jurisdiction of the selectmen over the subject matter, the laying out must be held void.   *State* v. *Richmond*, 26 N. H. 239; *Haywood* v. *Charlestown*; *Smith* v. *Northumberland*; *Griffin's Petition*, 27 N. H. 346.   As the highway was not legally laid out by the selectmen, the vote of the town would be insufficient to show a discontinuance of it, if it had been in any other way a legally established highway; but the road not being a legally established highway, the vote was simply of no effect.   As the jury could not, upon the facts stated, have found a discontinuance of a highway, the plaintiff has failed to make a case entitling him to damages under section 3 of chapter 54 of the Revised Statutes.   According to the provisions of the case, the verdict must be set aside, and

*Judgment entered for the defendants.*